## Jackson *v.* Jackson, Appellant.

Argued November 16, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*John A. Metz,* with him *John A. Metz, Jr., Benjamin Rothman* and *Metz & Metz,* for appellant.

*Edward O. Spotts, Jr.,* for appellee.

OPINION BY RHODES, P. J., January 14, 1949:

This is an appeal by respondent from an order of the court below awarding permanent alimony to libellant after a decree of divorce a mensa et thoro had been entered in an action which she had brought against respondent. The order of October 5, 1948, from which respondent has appealed, awarded permanent alimony to libellant at the rate of $260 per month beginning on October 15, 1948. The writ of certiorari from this Court was filed in the court below on October 14, 1948. Thereafter, on October 21, 1948, the court filed its opinion, in compliance with rule No. 58 of this Court, wherein it set forth the reasons for such order, and in addition undertook to amend the order of October 5th to provide that the monthly payments of $260 should include the maintenance and support of two minor children, aged 14 and 3, respectively, who were living with libellant. This attempt to introduce a substantial change in the order, while the appeal therefrom was still pending and awaiting disposition in this Court, was of no effect, for the reason that, upon the taking of the appeal, the court below lost its power to materially alter the order. *Drabant v. Cure,* 274 Pa. 180, 182, 118 A. 30. See, also, *Com. v. Smith (No. 1),* 116 Pa. Superior Ct. 134, 140, 177 A. 68.

Appellant's contention is that the order of the court below exceeded the limit of one-third of his income in violation of section 47 of the Act of May 2, 1929, P. L. 1237, 23 PS § 47. This section provides that, "In cases of divorce from bed and board, the court may allow the wife such alimony as her husband's circumstances will admit of, but the same shall not exceed the third part of the annual profit or income of his estate, or of his occu-

pation and labor, . . ." See *Betz v. Betz*, 70 Pa. Superior Ct. 396.

Although the court below, in its opinion, stated that "the figure of $260.00 a month is considerably less than one-third of the income and profit presently being received by the respondent [appellant] from his business, investments, commissions and other financial transactions," it nevertheless deemed it advisable to attempt to incorporate in its original order the provision that the alimony payments were to include the maintenance and support of the two minor children residing with libellant. We may therefore assume that the court below did not intend to fix the amount of permanent alimony at the rate of $260 a month for the support and maintenance of libellant alone.

There is nothing in section 47 of the Act of 1929 which suggests that the support and maintenance of minor children may be incorporated in an order for permanent alimony. An award of permanent alimony under section 47 of the Act of 1929 is made for the wife for her support. A father is still responsible for the support of his children, and may be compelled to provide therefor by proper proceedings in the court of quarter sessions. *Com. v. Edgar*, 44 Pa. Superior Ct. 496, 499. We have recognized that, where the allowance of alimony pendente lite is involved, the duty to support the children remains upon the father in addition to payment of alimony to the wife. *Gould v. Gould*, 95 Pa. Superior Ct. 387, 390. In this respect there is no difference between an order for alimony pendente lite and an order for permanent alimony under section 47 of the Act of 1929. We would not be disposed to modify the order of the court below except for the statements made in its opinion, and as any eventual inadequacy may be corrected by requiring appellant to provide for the support and maintenance of the two minor children now in libellant's custody, or by a proceeding to increase the order for alimony itself. See *Edgar v. Edgar*, 23 Pa. Superior Ct. 220, 222, 223.

Appellant's annual income seems to have been derived largely from three sources—rents from real estate which he owns, interest from investments, and profits from the real estate and insurance business in which he is engaged. It appears from figures given by him that he receives aggregate rentals of $3,660 a year. At the time of the first hearing in the court below, on December 18, 1947, he owned mortgages aggregating $38,000 which returned an income of approximately $2,280 a year; by the time of the second hearing, September 28, 1948, such mortgages to the amount of $17,934.62 had been paid off or disposed of by appellant.

In response to counsel's question as to how much insurance was placed out of his office, he replied: "I couldn't begin to answer that." When asked how much real estate he had sold in 1948, he answered: "I couldn't say. Perhaps $30,000 or $40,000; I don't know." However, an accountant, called on behalf of appellant, testified that he received, during the period from January to September 18, 1948, $2,792.95 in rentals, $574.76 interest, and $7,509.06 from the business, or a total from all sources of $10,876.77. On the same basis, the total gross income for the year 1948 may be estimated at $15,440.74. The only operating expenses to which appellant personally testified were salaries to employes aggregating $90 per week, or $4,680 per year; but the accountant testified that expenses for the period from January to September 18th amounted to $8,913.21, leaving a net income, as of September 18th, of $1,963.56.

The task of the court in arriving at a fair estimate of appellant's net annual income was greatly increased by his attitude. Appellant failed to produce certain account books which had been subpœnaed. He was asked by counsel: "Q. Can you get, over the noon hour, your books for 1947? A. I suppose I could if—. Q. Will you do that, please? . . . A. Someone has stole some of my records." After the noon recess, the examination was resumed: "Q. Can you produce the 1947 book? A. I have

my mortgage ledger, the only thing I have. All my records were stolen from me. Q. When were they stolen? A. I had a notice from the Federal Tax Bureau to produce three of our books for a hearing and I got them together to take in and they were stolen out of my car." His story is convenient for concealment but difficult to believe. Appellant also was evasive and contradictory when being examined as to certain straw party transactions which he had conducted in the course of his real estate business. Furthermore, appellant was making lavish expenditures inconsistent with the idea that his net income was meagre. Recently he had renovated the bathroom of his home at an expense of $300, he modernized the kitchen at an expense of $3,000, and he redecorated and recarpeted the house at an expense of $3,200 to $3,300.[1] In the summer of 1948 he purchased a new Lincoln automobile for which he paid $3,092. During the interval between the granting of the divorce on June 21, 1948, and the hearing to fix permanent alimony, appellant had agreed to pay libellant $275 per month.

In view of appellant's non-cooperative attitude in supplying factual information concerning his income, the court below was entitled to consider all these circumstances, in the exercise of its sound discretion in fixing the amount of award of permanent alimony. See *Betz v. Betz*, supra, 70 Pa. Superior Ct. 396, 404; *Com. ex rel. Crandall v. Crandall*, 145 Pa. Superior Ct. 359, 21 A. 2d 236; *Com. ex rel. Wieczorkowski v. Wieczorkowski*, 155 Pa. Superior Ct. 517, 38 A. 2d 347.

Appellant is apparently a man of business ability with profitable business connections, having about one hundred rental accounts. We are convinced that he has more means to pay the amount fixed by the court below as alimony for his wife than he has been willing to disclose or admit. The judge, who saw and heard the wit-

---

[1] Appellant testified to these facts on page 22a of the record. He subsequently testified that the total amounted to $3,000, page 53a.

nesses, concluded that appellant was evasive and insincere, and that the books exhibited to the accountant who testified on appellant's behalf did not disclose a complete picture of the profit or income derived from his business and other transactions.

We are not convinced that the amount of $260 per month is not within the statutory limitation; however a modification will be made on the basis of its intended scope as set forth in the opinion of the court below.

The order of the court below is modified by reducing the award of permanent alimony from $260 to $200 per month; costs of this appeal to be paid by appellant.