Marra *v.* Marra, Appellant.

Argued November 20, 1951. Before Rhodes, P. J., Hirt, Reno, Dithrich Ross, Arnold and Gunther, JJ.

*John B. Nicklas, Jr.,* with him *McCrady & Nicklas,* for appellant.

*Wm. J. Graham,* with him *Clyde P. Bailey,* for appellee.

OPINION BY ROSS, J., April 22, 1952:

On July 8, 1943, Aida N. Marra began an action in the Court of Common Pleas of Allegheny County for a divorce from bed and board on the grounds of cruel and barbarous treatment and indignities. On June 6, 1949, the husband, Daniel A. Marra, filed a complaint asking for an absolute divorce on the ground of indignities. The two actions were consolidated for trial and were heard in the court below by Judge MARSHALL sitting without a jury. On March 28, 1951, the trial court after dismissing the husband's complaint entered an order for a decree of limited divorce in favor of the wife together with $300 a month permanent alimony and $2000 counsel fees. From the order dismissing his complaint and from the order in favor of his wife, the husband took these appeals.

At the time of the trial, the appellant was 50 years of age and the appellee 43. They were married on March 6, 1931, and have five children ranging in age from 4 to 18 years, the eldest of whom is married and living in California while the others are living with their mother in North Hills Estates, Allegheny County. Previous to the final separation of the parties on March 28, 1949 when the wife withdrew from the home, the parties had separated at least four times by the wife's leaving the home because of the husband's conduct, reconciliation subsequently having taken place each time, partly through the intercession of the pastor of their church and that of relatives.

The wife's testimony was found credible by the trial judge and we find no reason for rejecting his appraisal

of credibility. Her testimony consists in large part of a recital of the occasions upon which she left her husband and the home and her reasons for doing so.

She testified that she left for about ten days in 1941 because "out of a clear sky . . . he ups with the pitcher of ice water and poured it all over the baby and I" . . ." and "Throwed the pitcher at us, a glass pitcher . . .". She left again in May 1943 because "Mr. Marra beat me bodily . . . With his fists and kicked me in my leg, kicked my legs with his shoes so bad it broke open and I had to have medical attention . . . for about a period of six months . . .". She testified that in January 1945, Marra "tore the radio out of the wall and throwed it at me" striking her face and, as a result, her face "was all black and blue afterwards". She did not leave after this incident because Marra picked up a snow shovel "and told me he would break my back with it, and I didn't dare step foot out of the door". She left in October 1945, however, because "he pulled me by the hair and kicked me, and I was pregnant at that time, and dragged me across the floor and pulled hair out of my head". She left again in April 1948 because "I was afraid of the man and feared the man . . . One evening in my bedroom he put his hands around my throat and told me he had me just exactly where he wanted me and it would be just a matter of seconds that I would be out of this world . . . He had his hands around my throat". The final separation occurred March 28, 1949 because Marra "threatened to throw me down the marble circular stairs. He told me that would not be murder; it would be accidental death".

The appellant did not make any specific denial of the various incidents of violence charged but confined himself to a few general statements to the effect that he had treated his wife "as a husband should", pro-

vided well and never abused her in any way. However on cross-examination he testified as follows: "Q. Had you abused her in any way? A. No, I didn't abuse my wife. I have hit her different times away back in 19—well, from 1932 up to 1940; but then I realized it was no use, so I just quit. Q. Did you ever hit her hard? A. Well, I hit her hard. I don't know how hard you mean . . . Q. Ever kick her? A. Yes, I kicked her once."

In addition to the various acts of violence committed against his wife by Marra, he, according to the uncontradicted testimony, told people that the couple's youngest child was not his, accused his wife of misconduct with a man from "Scott's Seed Store" and called her a prostitute. George A. Molter, who had been employed by the Marras as a gardener, testified that Marra told him that he thought his wife was unfaithful and requested him to keep a record of the mileage on the car Mrs. Marra drove. When Molter refused to keep such record, Marra did it himself. There is no evidence in the record that Marra's suspicions of his wife had any basis whatsoever.

It requires no citation of authority to support our conclusion, based upon an independent review of the entire record, that the evidence establishes the appellee's right to a divorce on the grounds of cruel and barbarous treatment and indignities. From this conclusion it follows that the husband's complaint was properly dismissed as he is not an innocent and injured spouse.

Section 47 of the Act of 1929, 23 PS §47, provides: "In cases of divorce from bed and board, the court may allow the wife such alimony as her husband's circumstances will admit of, but the same shall not exceed the third part of the annual profit or income of his estate, or of his occupation and labor . . . ." The alimony re-

ferred to is for the support of the wife alone and is in addition to the obligation of a father to support his minor children. *Jackson v. Jackson,* 163 Pa. Superior Ct. 629, 63 A. 2d 492. A support order of $200 per month for maintenance of the four minor children was entered in Allegheny County Court on April 16, 1951, so the allowance of $300 per month to appellee is, as contemplated by the statute, for her exclusive use. Appellant contends that it violates the Act in that it calls for an amount in excess of one-third of his annual income. There is merit in this contention and the amount of the permanent alimony must be reduced to bring it within the limitation imposed by the provisions of the Act.

The evidence of the appellant's income is meager but the amount of the alimony must be based upon such evidence. On May 9, 1949, the court entered an order that the appellant pay his wife $500 a month alimony *pendente lite.* On March 14, 1951, the appellant presented a petition for reduction in the amount of this order and a hearing thereon was held on March 19. At this hearing, the appellant testified that his gross income for 1950 *before* taxes was $5963 and again that his income—apparently after taxes—was "about $4600 or $4700". This is the only *testimony* relative to the appellant's income. However in the petition for reduction, he stated that his income for 1950 was "$5750.75 after Federal tax" and the appellant is bound by this statement of his net income. Even this figure, however, will support an order for only $160 a month under the one-third limitation in the Act, and, consequently, the amount of alimony must be reduced to that amount. Of course, the order for alimony remains within the control of the court below which, upon sufficient cause shown and within the provisions of the Act, may increase or decrease the amount of alimony so that it

shall at all times conform to the equitable rights of the parties. *Betz v. Betz,* 70 Pa. Superior Ct. 396; *McMahon v. McMahon,* 167 Pa. Superior Ct. 51, 74 A. 2d 718.

Appellant's contention that the amount of counsel fees allowed to the wife is excessive is without merit. This is a matter within the discretion of the court below (*Brady v. Brady,* 168 Pa. Superior Ct. 538, 79 A. 2d 803) and on the record before us there is nothing upon which we could base a finding that this discretion was manifestly abused.

The order of the court below dismissing the complaint of the appellant-husband is affirmed. The order granting a limited divorce to the appellee-wife together with permanent alimony and counsel fees is modified by reducing the amount of alimony to $160 a month and, as so modified, the order is affirmed.