**COMMISSIONER OF INTERNAL REVENUE, Petitioner,**

v.

**ESTATE of Myles C. WATSON, Garden City Bank & Trust Company, Executor, Respondent.**

**No. 56, Docket 23094.**

United States Court of Appeals Second Circuit.

Argued Oct. 13, 1954.
Decided Nov. 8, 1954.

---

942

H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Robert N. Anderson and Morton K. Rothschild, Sp. Assts. to Atty. Gen., for petitioner.

George L. Hubbell, Jr., and Charles R. Van de Walle, New York City, for respondent.

Before CHASE, MEDINA and HARLAN, Circuit Judges.

HARLAN, Circuit Judge.

The Commissioner asks us to review a decision of the Tax Court, 20 T.C. 386, holding deductible from the decedent's gross estate the amount of $76,315.99 paid in satisfaction of a claim of the decedent's divorced wife, and setting aside an estate tax deficiency of $8,736.-88 resulting from the Commissioner's disallowance of the deduction.

The question arises under § 812(b) (3) of the Internal Revenue Code of 1939, 26 U.S.C.A., which permits the deduction of "claims against the estate" which are allowable by the laws of the jurisdiction in which the estate is being administered, with the qualification that as to any claims "founded upon a promise or agreement" the deduction shall "be limited to the extent that" such claims "were contracted bona fide and for an adequate and full consideration in money or money's worth". It is also provided, however, that a relinquishment of marital rights "shall not be considered to any extent a consideration 'in money or money's worth.'"

The facts are not in dispute. On May 9, 1942 the decedent and his then wife, Jean W. Watson, entered into a separation agreement, governed by the laws of New York, providing, *inter alia*, that in consideration of the relinquishment of all other rights in her husband's estate, Jean, if she survived her husband as wife, or if not his wife was unmarried, should be entitled to receive one third of his net estate, as therein defined; that the husband would provide accordingly by will, but that if he failed to do so Jean's rights under the agreement would be enforceable against his estate; and that if the parties were legally divorced or separated:

"this agreement shall, nevertheless, remain in full force and effect, and any decree of divorce or of separation * * * shall not contain any provision contrary to the terms of this agreement nor require [the husband] to make any payments of money in excess of those provided for by this agreement, but may have

incorporated therein any of the provisions of this agreement".

Jean and her husband were divorced in Nevada on January 26, 1943. The Nevada court duly adopted the agreement, and its provisions were incorporated in the divorce decree, which provided "that the right of the Defendant [Jean] to separate support and maintenance, past, present and future, is adjusted by said agreement, and is hereby decreed in accordance therewith; and that each of the parties have judgment against the other according to the terms of said agreement."[1]

The decedent died on March 10, 1950, leaving his entire estate to his second wife, Olga S. Watson. Jean, who had not remarried, filed her claim for one-third of the net estate, and was paid by the Executor.

■■ The nub of the controversy is whether this claim was "founded" on the separation agreement, within the meaning of § 812(b) (3), for if it was, the amount paid by the estate was concededly not a deductible item under that Section.[2] The Commissioner contends that the claim was so "founded" because the effectiveness of the separation agreement was not contingent on the parties getting divorced, and the agreement also expressly provided that its terms should survive divorce and be the sole measure of the financial obligations of the parties to each other—the provisions of any decree of divorce to the contrary notwithstanding. That provision is effective under New York law. Goldman v. Goldman, 1940, 282 N.Y. 296, 26 N.E.2d 265. The taxpayer, on the other hand, argues that since the separation agreement was incorporated in the Nevada decree the divorced wife's claim should be regarded as "founded" on that decree rather than upon the antecedent agreement.

Similar questions were presented in Harris v. Commissioner, 1950, 340 U.S. 106, 71 S.Ct. 181, 95 L.Ed. 111, and in Commissioner of Internal Revenue v. Maresi, 2 Cir., 1946, 156 F.2d 929, upon which the Tax Court based its decision favorable to the taxpayer. The answer to these opposing contentions turns on how those cases are properly to be read.

Maresi held deductible from a deceased husband's gross estate payments initially fixed by a separation agreement which was later incorporated in a divorce decree. The deduction was allowed despite the fact that the effectiveness of the agreement was not conditioned upon divorce, and without regard to any question as to whether the agreement survived the decree of divorce. However, three years later in Harris v. Commissioner, 2 Cir., 1949, 178 F.2d 861, Judge Learned Hand, who wrote for the Court in Maresi, would seem to have narrowed the Maresi holding when he stated, 178 F.2d at page 864, that the Court had "viewed the agreement, whose existence as a contract was conditional upon the entry of the [divorce] decree, to be no more than a suggested compromise until confirmed, which the court might or might not choose to accept as the measure of the parties' obligations, and which became an obligation only by the decree," and that Maresi "stands for no more than that, when the validity of the settle-

---

1. At the time of the decree § 9463 of the Nevada Compiled Laws (Supp.1931–1941) provided: "In granting a divorce, the court may award such alimony to the wife and shall make such disposition of the community and separate property of the parties as shall appear just and equitable, having regard to the respective merits of the parties and to the condition in which they will be left by such divorce, and to the party through whom the property was acquired, and to the burdens, if any, imposed upon it for the benefit of the children. * * * "

2. One of the contentions in the Commissioner's brief is that the Tax Court erred in permitting the deduction because the taxpayer failed to show that the divorced wife's claim was allowed by the Nassau County Surrogate's Court in New York, where the estate is being administered. However, that contention was withdrawn on the oral argument before us, the Commissioner being satisfied that the claim had in fact been allowed by the Surrogate's Court.

ment is made conditional upon its adoption by the decree, and when it does not by its terms survive the decree, the payments are not 'founded' upon the 'promise or agreement.' "[3]  In Harris this Court held subject to gift taxes *inter vivos* payments made by a husband to his divorced wife under an "incorporated" separation agreement, because the agreement expressly survived the divorce decree, even though the agreement did not become operative until divorce.  The Court held that the payments were "founded" as much on the agreement as on the decree, and therefore subject to gift tax."[4]  The Supreme Court, however, reversed, holding that the effect of the "survivorship" clause was simply to give the wife a remedy on contract in addition to that under the decree for failure of the husband to pay, but that for gift tax purposes the husband's payments should be regarded as "founded" on the decree, and therefore not subject to gift taxes.  Harris v. Commissioner, 1950, 340 U.S. 106, 71 S.Ct. 181, 95 L.Ed. 111.

While Justice Douglas' opinion for the majority of the Court cites Maresi with approval, it is not altogether clear whether this was with reference to the original opinion or Judge Hand's later interpretation of it.  Certainly the opinion did not agree with Judge Hand's second qualification of Maresi in his Harris opinion—the "survivorship" point—but there is language which might be taken as approving the first qualification—that the effectiveness of such an agreement must be conditioned on divorce if the husband's subsequent payments are to escape taxation.  See 340 U.S. at pages 110–111, 71 S.Ct. at pages 183–184.  On the other hand, these parts of the Supreme Court opinion may be read merely as supporting, rather than as the reason for, the result reached by the Court.

That was the view of Harris evidently taken by the First Circuit in McMurtry v. Commissioner, 1953, 203 F.2d 659, where a husband's payments to his divorced wife were originally fixed by a separation agreement, which was later incorporated in a divorce decree, and were held not subject to gift taxes.  In that case the effectiveness of the agreement had not been conditioned on divorce, and Chief Judge Magruder said, 203 F.2d at page 662: "We read Harris v. Commissioner more broadly as supporting the proposition that, to the extent that the statute does not explicitly command adherence to meaningless formalities, all transfers agreed upon in contemplation of divorce and executed after approval by a divorce court having jurisdiction to give such sanction or in its discretion to prescribe some different property settlement, should be exempt from the gift tax."  In light of what we consider to have been the purposes of § 812(b) (3), we believe this to be the correct view of the Harris case.

These provisions of the Internal Revenue Code were not designed to impede the making of marital agreements, but rather to prevent the use of such agreements simply as a device to minimize taxation.  Section 812 permits a deduction for amounts paid in satisfaction of all kinds of claims against an estate.  Where such a claim is based on an agreement by the decedent with another, it might have been possible, absent anything more in the statute, for a person to "agree" with one of the objects of his bounty to pay him a certain amount at death, thereby creating a deductible claim against his estate.  To obviate that possibility the statute included language limiting the deduction to that part of the claim as was "contracted bona fide and for an adequate and full consideration in money or money's worth".  But

---

3.  Actually, as appears from the Maresi Record on Appeal (pp. 21–32), the effectiveness of the agreement was not conditional on the divorce.

4.  The gift tax being complementary to the estate tax, the sections in the gift tax

corresponding to § 812(b) (3) are read as *in pari materia* to those in § 812, with the result that *inter vivos* payments between spouses made in consideration of the relinquishment of marital rights are regarded as gifts.  Merrill v. Fahs, 1945, 324 U.S. 308, 65 S.Ct. 655, 89 L.Ed. 963.

that did not meet completely the situations which the statute sought to avoid. For a married man might contract to give his wife a share of his estate in return for her promise to waive dower or other statutory rights in his estate, and since such an agreement would satisfy the requirement of "an adequate and full consideration in * * * money's worth", this would leave the Treasury faced with the difficult problem of showing that the agreement was not "bona fide." It was apparently to avoid this problem that § 804 of the Revenue Act of 1932, 47 Stat. 280, added the language now found in subdivision § 812(b) (3) to the effect that a wife's release of rights in her husband's estate is not to be deemed "a consideration 'in money or money's worth.'" See dissenting opinion of L. Hand, C. J., in Meyer's Estate v. Commissioner, 2 Cir., 1940, 110 F.2d 367.

It is quite true that under a literal reading of § 812(b) (3) claims for amounts originally fixed by a separation agreement, whose initial and continued effectiveness stand apart from the decree of divorce, may be said to be "founded" on the agreement even though its terms have been incorporated in the divorce decree. But it seems to us that such an interpretation of the statute would make the remedy worse than the disease which it was sought to cure. The fact of divorce and the adoption by the decree of the financial terms agreed on by the parties governing the ending of their marital relationship should be taken, we think, as satisfying the purpose of the statute to ensure against colorable deductions. Cf. § 2516 of the Revenue Code of 1954, 26 U.S.C.A., exempting from gift taxes postnuptial payments under property settlements made within two years prior to divorce, and the Senate Committee Reports on that Section, Sen. Rep. 1622, 83d Cong., 2d Sess. 128, 481 (1954).

In the analogous situation of the deductibility of alimony payments for income tax purposes under former I.R.C. §§ 22(k) and 23(u), we have held that the statute should be construed to effect its broad remedial purposes. See Newton v. Pedrick, 2 Cir., 1954, 212 F.2d 357; Commissioner of Internal Revenue v. Moses, 2 Cir., 214 F.2d 912. And similarly here we think that the true purposes of § 812 are better effectuated by treating claims like these as "founded" on the decree of divorce, rather than to make the question depend upon the refined and somewhat artificial distinction between an agreement whose effectiveness is conditioned upon such a decree and one which is not so conditioned.

Affirmed.