ESTATE of Robert F. IVERSEN, Deceased.

PITTSBURGH NATIONAL BANK, agent for John D. Iversen, Executor, Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE.

No. 76–1289.

United States Court of Appeals, Third Circuit.

Argued Oct. 8, 1976.

Decided March 14, 1977.

---

Robert J. Dodds, III, Reed Smith Shaw & McClay, Pittsburgh, Pa., for Estate of Robert F. Iversen, Deceased, Pittsburgh National Bank, Agent for John D. Iversen, Executor, appellant.

Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, Michael L. Paup, Alfred S. Lombardi, Attys., Tax Div., Dept. of Justice, Washington, D. C., for Commissioner of Internal Revenue, appellee.

Before VAN DUSEN and ROSENN, Circuit Judges, and CAHN,* District Judge.

## OPINION OF THE COURT

CAHN, District Judge.

The Estate of Robert F. Iversen, Deceased, Pittsburgh National Bank, Agent for John D. Iversen, Executor ("Estate"), appeals [1] from an Order and Decision of the United States Tax Court imposing a deficiency in federal estate tax payable by the Estate in the amount of $225,446.01. Robert F. Iversen, a resident of Florida, died testate May 24, 1969. By his Will dated December 20, 1966, he appointed his brother, John D. Iversen, as the executor. The executor, in turn, appointed the Pittsburgh National Bank as his agent in the administration of the Estate.

The Internal Revenue Service calculated the deficiency by making a number of adjustments to the value of the decedent's gross estate as reported on the estate tax return. The only adjustment which the Estate contested in the Tax Court, and continues to contest on this appeal, involves the validity of a deduction of $159,343.33. That deduction represents the commuted value, as of the date of decedent's death, of the contractual right of decedent's divorced spouse to receive, in accordance with a postnuptial agreement, the sum of $1,000 per month from the date of decedent's death until her death or remarriage. We hold the deduction was valid and, therefore, reverse the decision of the Tax Court.

The factual background [2] of this dispute is set forth in comprehensive detail in the opinion of the Tax Court. *Estate of Robert F. Iversen*, 65 T.C. 391 (1975). Nevertheless, certain basic facts should be outlined for a clear comprehension of this matter.

---

\* Edward N. Cahn of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

1. This court has jurisdiction over this appeal pursuant to Int.Rev.Code of 1954, § 7482.

2. The parties submitted this case to the Tax Court for decision on a set of stipulated facts pursuant to Rule 122 of the Tax Court's Rules of Practice.

The decedent, born April 16, 1916, married Mary Elizabeth McKeever, his first wife, on April 2, 1938, in Auburndale, Massachusetts. Following the marriage, the parties resided in Allegheny County, Pennsylvania except when Mr. Iversen was in service with the United States Navy. No children were born of this marriage. In early 1950 the couple separated. During the initial separation, Mrs. Iversen remained in possession of the family residence, and Mr. Iversen provided for the upkeep and maintenance of that real estate and paid for living expenses for Mrs. Iversen.

On September 8, 1950, the couple executed a legal document entitled "This Agreement" which stated that it was entered into "in order to settle their marital and property rights without resorting to legal proceedings". The Agreement recited an intention on the part of the wife to obtain a divorce a vinculo matrimonii.[3] The Agreement obligated the husband to pay his wife the sum of $50,000 "in partial discharge of the wife's marital rights, other than maintenance and support . . ." The husband was also required to pay $1,000 to his wife for maintenance and support "as long as she remains his wife". If either party obtained a divorce decree, the husband was bound to continue the monthly payments "in lieu of alimony and in settlement of such legal obligation imposed upon him because of the marital relationship . . ." Under the Agreement the wife was entitled to receive the monthly payments until her death or remarriage. In the event of wife's remarriage, the husband was to pay her a lump sum of $75,000 which "will release in full the marital rights of said wife . . .." The Agreement contained a release by wife of all other claims against husband for support and maintenance except as set forth therein. It should be noted that under the Agreement the husband or his estate must make the monthly payments whether or not either party obtains a divorce decree.

On September 8, 1950, Mr. Iversen, in compliance with specific provisions of the Agreement, entered into an Agreement of Trust with Commonwealth Trust Company of Pittsburgh to provide security for the monthly payments and for the $75,000 lump sum payment to be made in the event of remarriage. On September 14, 1950, wife filed for absolute divorce in the Court of Common Pleas of Allegheny County, and a decree of divorce a vinculo matrimonii was entered on December 12, 1950. Mr. Iversen remarried on January 12, 1951.

Over the five years prior to September 8, 1950, Mr. Iversen had an average after-tax income from investments and trust funds of $33,000 per annum. He had no earned income in that five year period. As of September 8, 1950, Mr. Iversen was the sole owner of securities in the amount of $514,-014 and the dwelling house, valued at approximately $50,000, in which the couple had resided. These premises were not encumbered. In addition, the decedent was the sole beneficiary of a trust established by his father which, as of September 8, 1950, had an approximate value of $238,597. This trust provided that the income was distributable to Mr. Iversen in the discretion of the trustee and that the principal and accumulated income were distributable to him only after the death of his father and then in one-third increments as the beneficiary attained certain ages. Mr. Iversen's father died April 12, 1967, at which time the principal and accumulated income were distributed to Mr. Iversen. Mr. Iversen was also the beneficiary of an undivided one-fifth interest in two other trusts with combined assets on September 8, 1950, of

---

3. Pennsylvania law provides for two types of divorce. A divorce a vinculo matrimonii (from the bonds of matrimony) is referred to as a full and complete divorce after which the parties may remarry. A spouse has no right to alimony or support following such a divorce decree. A divorce a mensa et thoro (from bed and board) is in essence a judicially approved separation upon which a spouse may obtain alimony through court proceedings. The parties to a divorce a mensa et thoro are not permitted to remarry. See C. I. R. v. Rankin, 270 F.2d 160 (3d Cir. 1959); Freedman, Law of Marriage and Divorce in Pennsylvania, 2d ed. 363; 23 P.S. § 10, et seq.

$1,367,608. Mr. Iversen's rights under the two trusts were subject to certain limitations including a provision that not more than two-thirds of Mr. Iversen's interest was to be distributed before his attaining the age of sixty. At the time of his death, Mr. Iversen's taxable estate for federal estate tax purposes exceeded $2,000,000.

Upon the execution of the Agreement of September 8, 1950, Mr. Iversen paid his wife the lump sum of $50,000 and reported that amount for federal gift tax purposes. Mr. Iversen personally paid his first wife $1,000 per month from October, 1950, until the time of his death on May 24, 1969. Mr. Iversen's first wife, who never remarried, died on February 2, 1973, at the age of 58. From the time of Mr. Iversen's death in May, 1969, through February, 1973, the successor trustee (a consolidation of banks having taken place) made the $1,000 monthly payments. The successor trustee during that time frame paid the first Mrs. Iversen a total of $46,000.[4]

The issue submitted to the Tax Court was whether the Estate was entitled to a deduction for the statistical value as of May 24, 1969, of the right of the first Mrs. Iversen to continue to receive $1,000 per month following the death of her former husband until her death or remarriage. The Tax Court sustained the deficiency imposed by the Internal Revenue Service and in so do-

ing reached three separate conclusions. First, the Tax Court found that the establishment on September 8, 1950, of the trust to secure the $1,000 monthly payments was not supported by consideration in money or money's worth to support a deduction under Internal Revenue Code of 1954 § 2043(a)[5] because:

> The transfer of assets to the trust was not made in exchange for Mary's marital rights including her right to support inasmuch as these marital rights were exchanged for the payments specified in the separation agreement for which Robert or his estate was liable and remained liable with the trust estate merely a security arrangement.

*Estate of Robert F. Iversen, supra,* at 403.

Second, the Tax Court found that the release of support rights made during the existence of the marriage in exchange for monthly payments for her life, constituted a bona fide claim against the decedent's estate supported by "consideration in money or money's worth" as required by Int. Rev.Code of 1954 § 2053(c)(1)(A).[6]

Third, the Tax Court concluded that the claim against the estate based on the Agreement did not satisfy the test of "an adequate and full consideration" also set forth in Int.Rev.Code of 1954 § 2053(c)(1)(A). The Tax Court held that for federal estate tax purposes there was no

---

4. The Commissioner has not contended that the deduction, even if valid, should be limited to the amount actually paid rather than the present value calculated as of the date of death by the use of statistical tables reflecting the probabilities of life expectancy and marriage. In this respect it should be noted that the first Mrs. Iversen's death postdated the filing of the federal estate tax return. *See C. I. R. v. Shively's Estate,* 276 F.2d 372 (2d Cir. 1960); *But see Gowetz v. C. I. R.,* 320 F.2d 874 (1st Cir. 1963).

5. Int.Rev.Code of 1954 § 2043(a) states: "If any one of the transfers, trusts, interests, rights, or powers enumerated and described in sections 2035 to 2038, inclusive, and section 2041 is made, created, exercised, or relinquished for a consideration in money or money's worth, but is not a bona fide sale for an adequate and full consideration in money or money's worth, there shall be included in the gross estate only the excess of the fair market value at the time of death of the property otherwise to be includ-

ed on account of such transaction, over the value of the consideration received therefor by the decedent."

6. Int.Rev.Code of 1954 § 2053(c)(1)(A) states: "The deduction allowed by this section in the case of claims against the estate, unpaid mortgages, or any indebtedness shall, when founded on a promise or agreement, be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth; except that in any case in which any such claim is founded on a promise or agreement of the decedent to make a contribution or gift to or for the use of any donee described in section 2055 for the purposes specified therein, the deduction for such claims shall not be so limited, but shall be limited to the extent that it would be allowable as a deduction under section 2055 if such promise or agreement constituted a bequest."

"adequate and full consideration" received by Mr. Iversen on September 8, 1950, in exchange for his promise to bind his estate to make the monthly payments following his death in the event his first wife survived him and remained unmarried.

■ The factual record supports the Tax Court's first conclusion that the establishment of the trust as security for Mr. Iversen's personal obligation to make the monthly payments was not contracted for adequate and full consideration in money or money's worth.[7] We concur with the conclusion of the Tax Court:

> [T]hat Robert [Mr. Iversen] received no consideration for the transfer of assets to the Mary Iversen Trust and hold that the value of the trust estate at decedent's death which was includable in decedent's gross estate is not reduced to any extent under section 2043(a).

*Estate of Robert F. Iversen, supra,* at 403.

We also concur with the second conclusion of the Tax Court which rejected the Government's contention that the $1,000 monthly payments were not supported by "consideration in money or money's worth" as required by Int.Rev.Code of 1954 § 2053(c)(1)(A). According to the Commissioner, the language in the Agreement and subsequent actions of the parties require a finding that the actual consideration for the monthly payments was a release of marital rights which are specifically excluded by Int.Rev.Code of 1954 § 2043(b)[8] from constituting consideration in money or money's worth to support a deduction under Int.Rev. Code of 1954 § 2053. The Commissioner argues the immediate institution of divorce proceedings and remarriage of Mr. Iversen

within one month of the date of the divorce decree are evidence that the agreement to make the monthly payments was a quid pro quo for a release of the husband's marriage bonds and thus not consideration in "money or money's worth". The Commissioner also relied on the provision of Pennsylvania law that after divorce *a vinculo matrimonii* a husband has no obligation to pay support or alimony to his former spouse. The Tax Court dealt with these arguments as follows:

> To accept [Commissioner's] construction of the separation agreement requires the conclusion that [first wife] exacted a considerable sum from [Mr. Iversen] for her release of a right to support that did not exist under Pennsylvania law. It is more reasonable to conclude that under the separation agreement [first wife] received the substantial monthly payments in exchange for her release of existing rights to support that had substantial value. The absolute divorce of [the parties] after the time of execution of the separation agreement, is not determinative or helpful in construing the terms of the separation agreement. The agreement was effective upon its execution irrespective of whether any decree of divorce was obtained. In fact [first wife's] filing of her complaint seeking an absolute divorce upon the execution of the separation agreement suggests that the payments under it were for her existing support rights under Pennsylvania law.

*Estate of Robert F. Iversen, supra,* at 408.

■■ The above reasoning is buttressed by several additional considerations. An agreement between spouses to obtain a divorce *a vinculo matrimonii* is against public

---

7. The estate contended that the establishment of the trust was intrinsically intertwined with the Agreement and was supported by adequate and full consideration determined, as of the date the trust was created, in the form of the wife's release of her right to support. However, Mr. Iversen was primarily responsible for and did in fact make the monthly payments during his lifetime. The trust was established to provide security for Mr. Iversen's support obligations. This is a distinguishing feature from *Estate of Davis (Jones v. C. I. R.),* 440

F.2d 896 (3d Cir. 1971), where the inter-vivos trust was "established primarily for the benefit of [the] estranged wife, who survived him."

8. Int.Rev.Code of 1954 § 2043(b) states: "For purposes of this chapter, a relinquishment or promised relinquishment of dower or curtesy, or of a statutory estate created in lieu of dower or curtesy, or of other marital rights in the decedent's property or estate, shall not be considered to any extent a consideration 'in money or money's worth.'"

policy and thus unenforceable.[9] Therefore, upon the execution of the Agreement, the first Mrs. Iversen had no legal or equitable obligation to obtain an absolute divorce. Consequently, what the wife bargained for was a guaranteed monthly stipend for her life or until her remarriage in exchange for a release of her support rights. The Commissioner's regulations [10] recognize a release of support rights as consideration in "money or money's worth". Also, the record is clear that the first wife had no independent income or assets. In such circumstances, it is more likely, considering the practicality of the situation, that the monthly payments until wife's death or remarriage replaced the husband's support or alimony obligations and do not represent consideration paid for a release of marital rights. We are convinced, therefore, that the Tax Court was correct in so finding.

The Tax Court determined, however, that while the release of the first wife's support rights constituted "consideration in money or money's worth" as required by Int.Rev. Code of 1954 § 2053(c)(1)(A), the additional test set forth in the same section of "adequate and full consideration" was not met. The Tax Court based its conclusion upon an estimate of the amount of support or alimony a Pennsylvania court would have awarded the first Mrs. Iversen if the parties had not settled the matter amicably. The Tax Court accepted the Commissioner's argument that under Pennsylvania law the maximum the first Mrs. Iversen could receive for support or alimony would be less than

$1,000 per month during Mr. Iversen's lifetime and, therefore, any payments after his death were gratuitous and not made in exchange for "adequate and full consideration".

The Tax Court recognized that the first wife under Pennsylvania law would have been entitled to bring an action for maintenance and support pursuant to 18 P.S. § 4733 [11] or 48 P.S. § 131, *et seq.*, or to petition for alimony pendente lite and permanent alimony pursuant to 23 P.S. § 46, *et seq.* In both instances, however, the Tax Court found that Pennsulvania law would not permit an order in excess of one-third of the after-tax income of the husband.[12] Reasoning from that premise, and relying on Rev.Rul. 71–67, 1971–1 Cum.Bull. 271,[13] the Tax Court concluded, since Mr. Iversen had an average annual after-tax income of $33,000 over each of the five years preceding September 8, 1950, that the maximum amount which the first Mrs. Iversen could have obtained in a judicial proceeding for support or alimony as of that date was $11,000 per annum, payable under Pennsylvania law only until the death of her husband. Because she negotiated a payment of $12,000 per annum, for the duration of her life or until remarriage, the Tax Court held, in essence, that the wife got the better of the bargain and her release of support rights, limited under Pennsylvania law to a maximum value of $11,000 per year until her husband's death, is inadequate in value to support a deduction for post-death monthly payments because she received

---

**9.** *See Schmoker v. Schmoker,* 359 Pa. 272, 59 A.2d 55 (1948).

**10.** For the purposes of § 2043(b), support rights are not deemed to be marital rights. Rev.Rul. 68–379, 1968–2 Cum.Bull. 414.

**11.** This statute has been repealed by the Act of December 6, 1972, P.L. 1482, No. 334, § 5, 18 C.P.S.A. page 127. However, the substantive law of support has not been changed.

**12.** The amount of support for a wife where there are no dependent children is generally limited to one-third of the husband's after-tax income. *McGavic v. McGavic,* 222 Pa.Super. 246, 294 A.2d 795 (1972). By statute, 23 P.S. 47, the amount of alimony " . . . shall not

exceed the third part of the annual profit or income of his estate, or of his occupation and labor . . . "

**13.** At page 272:

The question whether the amount of the claim is in excess of the wife's reasonable support rights is a matter for determination by the District Director after consideration of the facts and circumstances of the case. Elements to be considered are the amount of the husband's annual income, the extent of his assets, the relative ages of the parties and, where applicable, the probability of the wife's remarriage, etc. [Citation omitted.]

during his lifetime more than her support rights were worth.

■ While it is ordinarily true that support or alimony for the wife will not exceed one-third of the husband's net income, there are exceptions. The extent of the husband's assets is also a relevant consideration. In *Com. ex rel. Kallen v. Kallen*, 200 Pa.Super. 507, 508, 190 A.2d 175, 176 (1963), the court stated:

It is well settled that the purpose of a support order is to secure such an allowance to the wife and child as is reasonable, having in mind the *husband's property* and earning capacity and the station in life of the parties. (Emphasis supplied.)

In *Commonwealth ex rel. Hauptfuhrer v. Hauptfuhrer*, 226 Pa.Super. 301, 310 A.2d 672 (1973), the husband, who was a beneficiary of a substantial trust, appealed from an $800 per week support order on the ground it was excessive. The husband contended, *inter alia,* that he would be required to invade his capital assets to meet the support payments. The court first confirmed that:

The purpose of a support order for a wife is, . . . to secure her a reasonable allowance, bearing in mind the husband's earning capacity *and property* and the station in life of the parties. (Emphasis supplied.)

The court, although it reduced the support order to $600 per week, rejected the husband's contention. In so doing, Judge Spaulding concluded that the husband:

has sufficient income *and assets* to pay support in the amount of $600 per week, . . . (Emphasis supplied.)

The court then observed:

Appellant's additional argument that he might be required to reduce his capital

assets in order to pay the support order is not persuasive.

*See also Appleton v. Appleton*, 191 Pa.Super. 95, 155 A.2d 394 (1959). The foregoing cases establish unequivocally that the extent of a husband's capital assets is an important factor used by Pennsylvania domestic relations judges in setting the amount of a support order. Therefore, the Tax Court erred in not considering Mr. Iversen's capital assets in estimating the amount of support which Mrs. Iversen would have received had she litigated that issue.

■ Although some of his assets were subject to trusts, a Pennsylvania statute [14] provides for the issuance of attachment execution to enforce a support order against trust assets, even where the underlying trust document contains spendthrift provisions. Furthermore, if the wife elected to obtain a court order to enforce her support rights or rights to alimony she would be permitted to petition for an increase in the amount payable in the event of changed circumstances. [15] Although the support rights must be evaluated as of September 8, 1950, for the purpose of measuring in economic terms what the wife gave up by the release of her right to support, the husband, considering the amount of his personal and trust assets, concurrently received a valuable promise freezing his support obligation irrespective of future improvement in his economic position. If the first Mrs. Iversen had opted to litigate her rights to support or alimony in the Pennsylvania courts, she would not have been limited to $11,000 per year on the ground that her husband's net income was $33,000 per year. The Pennsylvania courts would have considered the amount of Mr. Iversen's unencumbered assets as well as his economic advantages as a beneficiary of the several trusts. Further-

---

**14.** 18 P.S. § 4322(d)(1) states: "The court may also issue the appropriate writ of execution against any property, real or personal, belonging to the defendant, and its writ of attachment execution against any money or property to which he may be in any way entitled, whether under what is known as a spendthrift trust or otherwise, which shall not exceed 50% thereof,

and shall remain a continuing levy until the order has been paid in full with costs. The person against whom an order is made shall not be entitled to the benefits of any exemption statute now in force or hereafter passed."

**15.** *Com. ex rel. Roviello v. Roviello*, 229 Pa.Super. 428, 323 A.2d 766 (1974).

more, the Commissioner's regulation recognizes that an element to consider in determining whether an estate tax deduction exceeds "the wife's reasonable support rights", is "the extent of [the husband's] assets".[16]

■ The record contains detailed proof about the net worth of Mr. Iversen as of September 8, 1950. The abundant evidence of Mr. Iversen's substantial net worth disproves any suggestion by the Commissioner that Mrs. Iversen negotiated a contract for support payments in excess of their actual value. It is simply wrong to suggest that a husband possessed with the economic advantages of Mr. Iversen overpaid his wife by agreeing to a $1,000 per month support contract for her life, when at that time he had reason to believe he would become endowed with assets in excess of $1,000,000. There is nothing in the record to suggest that the first Mrs. Iversen was a natural object of her husband's bounty. It is more realistic to consider the marriage an unhappy one, with the wife agreeing to take less than she would be entitled to receive through legal proceedings to avoid the unpleasantness of publicizing, in nonsupport court, the details of an unhappy marriage. By establishing the magnitude of Mr. Iversen's capital and trust assets, as well as his net income, the estate has met its burden of proving that the relinquishment by the first Mrs. Iversen of her support rights constitutes "adequate and full consideration" for the post-death payments. *See United States v. Davis*, 370 U.S. 65, 72, 82 S.Ct. 1190, 8 L.Ed.2d 335 (1962).

Another reason for our permitting the deduction is that if the divorce settlement was incorporated in a divorce decree, it would be deemed to be supported by adequate and full consideration. *Harris v. Commissioner of Internal Revenue*, 340 U.S. 106, 71 S.Ct. 181, 95 L.Ed. 111 (1950); *see In re Estate of Hartshorne*, 402 F.2d 592 (2d Cir. 1968). However, it is not the practice in Pennsylvania to incorporate divorce settlement agreements into a decree of divorce. Thus, under exactly the same circumstances, if the parties resided in a state where the divorce decree set forth the monthly alimony payments to the wife, the estate would be entitled to a deduction without question.

This case is remanded to the Tax Court for a recalculation of the deficiency in accordance with this opinion and under rule 155 of that court.

---

**16.** See footnote 13, *supra*.