ESTATE OF EDWARD SATZ, DECEASED, ROBERT S. GOLDENHERSH, EXECUTOR, PETITIONER *V.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 687–77.    Filed June 29, 1982.

*Stanley M. Rosenblum* and *Carl C. Lang,* for the petitioner.
*Robert P. Edler,* for the respondent.

OPINION

TANNENWALD, *Chief Judge*: Respondent determined a deficiency of $18,486.66 in petitioner's Federal estate taxes. We must determine whether petitioner is entitled to a deduction of $66,675.48 under section 2053[1] for amounts paid to decedent's former wife because of decedent's failure to name her the beneficiary of certain life insurance policies.[2]

This case was submitted fully stipulated pursuant to Rule 122. The stipulation of facts is incorporated by this reference.

Petitioner is the Estate of Edward Satz represented by its executor, Robert S. Goldenhersh (Mr. Goldenhersh). At the time he filed the petition in this case, Mr. Goldenhersh resided in St. Louis, Mo.

Edward Satz (decedent) died on December 25, 1973. Decedent and his first wife, Ruth C. Satz (Ruth), were divorced on February 16, 1971. Sometime in February of 1971 prior to their divorce, decedent and Ruth entered into an agreement, entitled "Stipulation," containing provisions with respect to child custody and support, alimony, the division of certain property, and miscellaneous matters. The stipulation provides in relevant parts as follows:

the parties * * * do mutually stipulate and agree that in the event the Court sees fit to grant Plaintiff [Ruth] a divorce, the various rights and obligations of the parties shall be settled and compromised pursuant to the following Stipulation subject to the approval of the Court, to-wit:

1. CHILD CUSTODY—Plaintiff shall have the custody of the three (3) minor children * * *

2. CHILD SUPPORT—It is mutually stipulated and agreed * * * that a reasonable and fair sum for Defendant [decedent] to pay as and for child support is [specifying amounts for each child] * * * aggregating Five Hundred Dollars ($500.00) per month for all three children; said child support shall continue as to each child until such child reaches the age of twenty-one (21) years * * *

3. ALIMONY—It is mutually stipulated and agreed that Defendant shall pay Plaintiff, as and for permanent alimony, the sum of Five Hundred

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect at the date of death, and all references to Rules are to the Tax Court Rules of Practice and Procedure.

[2]The parties have stipulated that another issue, the amount of the marital deduction, is solely derivative in nature; its computation is dependent on the deductibility of decedent's former wife's claim.

Dollars ($500.00) per month. This provision is not to be construed as imposing a contractual obligation, and the alimony awarded plaintiff in this instance shall be subject to future modification because of changed conditions in accordance with the laws of the State of Missouri.

4. ADJUSTMENT OF CHILD SUPPORT AND ALIMONY—The foregoing provisions for child support and alimony are based on present estimates * * * and the parties recognize the right of each party to seek and obtain modification of said provisions * * *

  *   *   *   *   *   *   *

D. In the event of the death of either party, or in the event plaintiff shall remarry, all alimony shall immediately terminate.

5. COLLEGE EDUCATION—[Defendant is responsible for providing for the children's college education.]

6. INSURANCE—Defendant is presently the owner of [four life insurance policies with face values totaling $65,000]. Defendant agrees to maintain said life insurance in full force, and will continue to pay the premiums on same, and will irrevocably constitute Plaintiff as the primary beneficiary and the aforesaid children as secondary beneficiaries. Upon death or remarriage of plaintiff, said insurance will be modified so that the said children shall be the primary beneficiaries. Defendant further agrees not to borrow on the cash value, if any, of said policies without plaintiff's consent. * * * All of the provisions of this paragraph shall terminate when all three of the aforesaid minor children have reached majority *and* plaintiff has either remarried or become deceased.

7. AUTOMOBILE—Defendant will * * * transfer title to [a specified automobile] to plaintiff. * * *

8. HOUSE SALE PROCEEDS— * * * Defendant agrees that [the] proceeds [from the sale of the parties' home] shall belong solely to Plaintiff * * *

9. FURNITURE AND HOUSEHOLD GOODS—All furniture, housewares, appliances, linens and all other contents * * * which were formerly located in the aforesaid home * * * shall hereafter be the sole property of plaintiff.

  *   *   *   *   *   *   *

13. DECREE—It is mutually stipulated and agreed that this Stipulation, when fully executed, shall be attached to and become part of the decree rendered by the Court in the within action.

14. MUTUAL RELEASE—The parties hereto do mutually release each other from any and all obligations, liabilities, and causes of action which have arisen or may have arisen between them in connection with their marriage to each other, except for the obligations specifically hereinabove set forth.

The divorce decree, entered on February 16, 1971, in the Circuit Court of St. Louis County, Mo., gave Ruth custody of the children and provided for child support and alimony in the amounts set forth in the stipulation. The decree also specifical-

ly provided that the provisions for alimony and child support could "be modified as per stipulation filed" and recited "Stipulation filed, marked Plaintiff's exhibit '1' and made part of decree." The decree made no specific reference to the provisions relating to insurance or other items of property.

As of the date of decedent's death, Ruth had not remarried.

Decedent failed to comply with paragraph 6 of the stipulation in that he failed to name Ruth the primary beneficiary of the policies, and he borrowed against the policies without her consent. After decedent's death, the net proceeds of three of the policies were paid to Mr. Goldenhersh as trustee of a trust established under decedent's will. The net proceeds of the fourth policy were paid to Mr. Goldenhersh as "trustee and executor." The net proceeds of the four policies totaled $62,189.07.[3]

After decedent's death, Ruth discovered that he had failed to abide by the terms of the stipulation. On or about March 25, 1974, she filed a petition for declaratory judgment and injunction in the Circuit Court of St. Louis County, invoking that court's equity jurisdiction. Ruth asked that she be determined entitled to the proceeds of the four policies and sought damages in the amount of the unauthorized loans against the policies. On April 8, 1974, Ruth timely filed a claim in the Probate Court of St. Louis County for $65,000, the face amount of the four policies. She later amended that claim, seeking $66,675.48, face amount of the policies plus post mortem dividends and interest. Ruth's claim was allowed by the Probate Court. Mr. Goldenhersh, as executor, appealed the decision to the Circuit Court for St. Louis County. Mr. Goldenhersh's appeal from the Probate Court and Ruth's petition invoking the Circuit Court's equity jurisdiction were consolidated. On February 7, 1975, the Circuit Court heard and sustained Ruth's motion for summary judgment and ordered Mr. Goldenhersh, as executor, trustee, to pay Ruth the net amount of the policies, $62,892.76, and ordered Mr.

---

[3]The net amount consists of total face values of $65,000, loans against the policies and interest on the loans of $4,637.78, dividends of $1,762.75, and returned premiums of $64.10.

Goldenhersh, as executor, to pay Ruth the amount of the unauthorized loans, $3,782.72.[4] On or about March 13, 1975, Mr. Goldenhersh transferred the proceeds of the policies, $62,892.76, plus interest earned thereon, and the amount of the loans, $3,782.72, to Ruth.

On its Federal estate tax return, petitioner claimed a deduction under section 2053 of $66,675.48 for the amounts paid to Ruth. Respondent has disallowed the deduction.

Initially, we note that both parties concede that the net proceeds of the insurance policies were properly included in decedent's gross estate. Respondent concedes that, absent the limitations contained in section 2053(c)(1)(A), petitioner's deduction would be allowable under section 2053(a)(3) or (4).[5] In support of his denial of the deduction, respondent argues that: (1) Ruth's claim (or the indebtedness with respect to the insurance policies) is founded on an agreement (the separation agreement); (2) with respect to claims founded on an agreement, section 2053(c)(1)(A) limits the deduction "to the extent that [the agreement was] * * * contracted bona fide and for an adequate and full consideration in money or money's worth"; (3) in exchange for decedent's promise to name her as beneficiary of the insurance policies, Ruth relinquished "other marital rights"; (4) section 2043(b) provides that for purposes of the estate tax, a relinquishment "of other marital rights in the decedent's property or estate, shall not be considered to any extent a consideration 'in money or money's worth'"; (5) because of the lack of consideration, section 2053(c)(1)(A) disallows petitioner's deduction. To summarize respondent's position: Ruth's claim is founded on an agreement which was not contracted for full and adequate consideration in money or money's worth; therefore, petitioner is not entitled to a deduction in the amount of the claim.

---

[4] $62,892.76 + $3,782.72 = $66,675.48. The parties have not provided us with reconciliation of these amounts and the figures presented in note 3 *supra.*

[5] Sec. 2053(a) permits a deduction—

(3) for claims against the estate, and

(4) for unpaid mortgages on, or any indebtedness in respect of, property where the value of the decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate,

as * * * allowable by the laws of the jurisdiction * * * under which the estate is being administered.

Petitioner sets forth several alternative arguments in sup-
port of its deduction: (1) The $66,675.48 is deductible because,
under Missouri law, the jurisdiction under which the estate is
being administered, Ruth had an equitable assignment of the
policies and a vested right to the proceeds of those policies; (2)
Ruth's claim was founded on the divorce decree, rather than
on a promise or agreement, and is therefore deductible under
section 2053(a)(3) and (4) without regard to the section
2053(c)(1)(A) limitation; and (3) if Ruth's claim was founded on
an agreement, it was contracted for "an adequate and full
consideration in money or money's worth."

### 1. Equitable Assignment

Petitioner, citing *Kelly v. Layton,* 309 F.2d 611 (8th Cir.
1962); *Perry v. Perry,* 484 S.W.2d 257 (1972); and *Prudential
Insurance Co. of America v. Gibson,* 421 S.W.2d 26 (Mo. App.
1967), argues that, under Missouri law, when a party who
owns a life insurance policy agrees, incident to a divorce, to
name a second person as beneficiary, that agreement consti-
tutes an equitable assignment of the policy and gives the
second person a vested right to the proceeds of that policy.
Petitioner contends that: in enforcing her claim in the
Missouri courts, Ruth asserted, in addition to a cause of action
for breach of contract, an equitable interest in a specific res
(the insurance proceeds); the Circuit Court's decision allowing
Ruth's claim was based on the latter theory as well as the
former; therefore, the claim "is clearly deductible under
section 2053(a)(3) and (a)(4) without reference to the limita-
tions of section 2053(c)."

We do not find petitioner's argument persuasive. Petitioner
has merely proven that Ruth's claim is "allowable by the laws
of the jurisdiction * * * under which the estate is being
administered" (see sec. 2053(a)); respondent concedes as much.
For purposes of section 2053(c)(1)(A), the reduction to judg-
ment of a claim originally founded on an agreement does not
transform that claim into anything other than one founded on
an agreement. Cf. *Estate of Davis v. Commissioner,* 57 T.C. 833
(1972). If Ruth's claim to the insurance proceeds is founded on
the separation agreement rather than on the divorce decree (a
point which will be discussed *infra*), the consideration limita-
tion of section 2053(c)(1)(A) is operative without regard to

Ruth's remedies under State law for enforcing that claim. Section 2053(c)(1)(A) is concerned with whether or not the claim is *founded* on an agreement, not with the remedies provided by State law to enforce such agreement. See *Estate of Davis v. Commissioner, supra.* See also *Harris v. Commissioner,* 340 U.S. 106, 111 (1950); *Luce v. United States,* 444 F. Supp. 347, 354 (W.D. Mo. 1977).

A contrary decision would undermine the purpose of the consideration requirement of section 2053(c)(1)(A)—"to prevent the making of what are in substance tax-free testamentary dispositions through the medium of contractual claims." *Estate of Morse v. Commissioner,* 69 T.C. 408, 417 (1977), affd. per curiam 625 F.2d 133 (6th Cir. 1980). Despite any State law which might have provided that the separation agreement operated as an equitable assignment to Ruth of the insurance policies, Ruth's claim is not deductible unless contracted for an adequate and full consideration in money or money's worth.[6] In this connection, it seems to us that the possible existence of an equitable assignment under Missouri law by virtue of the cases relied upon by petitioner would more properly go to the issue of includability of the proceeds of the insurance in decedent's estate—an issue which petitioner has conceded presumably because of decedent's reversionary interest.

## 2. Claim Founded on Divorce Decree

The consideration requirement of section 2053(c)(1)(A) applies to claims "founded on a promise or agreement." Claims founded on a divorce decree are not founded on an agreement, and such claims, if they meet the requirements of section

---

[6]Petitioner cites *Estate of Robinson v. Commissioner,* 63 T.C. 717 (1975), and *Estate of DeVos v. Commissioner,* T.C. Memo. 1975–216, in support of its argument that the equitable assignment of the policies to Ruth under Missouri law makes the claim deductible without regard to the consideration requirement. Petitioner's reliance on these cases is misplaced. The deductions in those cases were allowed without regard to consideration because the claims were founded on the divorce decree rather than on a promise or agreement. Whether the claim in the present case is founded on the divorce decree will be discussed later in this opinion. *Estate of Robinson* and *Estate of DeVos* do not support the proposition that a claim otherwise founded on a separation agreement is deductible without regard to consideration merely because that claim can be enforced in equity. We note that in *Estate of DeVos,* a Michigan statute specifically required the divorce court to dispose of the insurance policies involved therein. See T.C. Memo. 1975–216 n. 2. In the instant case, not only was there no such mandate to, or power in, the Missouri court, but the decree omitted any reference whatsoever to the disposition of the insurance.

2053(a), are deductible without regard to the limitations of section 2053(c)(1)(A). *Estate of Robinson v. Commissioner*, 63 T.C. 717 (1975); *Estate of Watson v. Commissioner*, 20 T.C. 386 (1953), affd. 216 F.2d 941 (2d Cir. 1954). See also *Harris v. Commissioner, supra.* As might be expected, petitioner argues that Ruth's claim was founded on the divorce decree and respondent contends that it was founded on the separation agreement.

The sine qua non of a conclusion that a claim is founded on a decree rather than the agreement between the parties is that the decree be the operative element. *Estate of Fenton v. Commissioner*, 70 T.C. 263, 271–274 (1978). This, in turn, depends upon whether the divorce court has the power to decree a settlement of the matter upon which the claim is based (including the power to vary the terms of the agreement between the parties)—in this case the property rights in the insurance policy. *Harris v. Commissioner, supra* at 109–110; *Estate of Fenton v. Commissioner, supra* at 271; *Estate of Robinson v. Commissioner, supra* at 722; *Bowes v. United States*, an unreported case (N.D. Ill. 1977, 41 AFTR 2d 78–1431, 77–2 USTC par. 13,212), affd. on another issue 593 F.2d 272 (7th Cir. 1979). The mere fact that the Satzes' stipulation was made part of the divorce decree is not in and of itself determinative. See *Estate of Fenton v. Commissioner, supra.*

When we examine the factual and legal pattern herein, we are satisfied that respondent must prevail.

Both parties have favored us with a plethora of cases involving the applicability of Missouri law. Practically all of those cases, however, deal with the issue of whether a separation agreement was merged into or survived a decree of divorce and have little direct bearing on the issue at hand. Nevertheless, as will subsequently appear, in the context of determining the intention of the parties on the issue of merger or survival, they shed considerable light on the power of the Missouri courts to decree or vary property settlements of the parties.

At the time Ruth and decedent were divorced, Missouri law provided: [7]

---

[7] The Missouri divorce laws were substantially revised in 1974. See Mo. Rev. Stat. secs. 452.325, 452.330 (Vernon 1977). The new provisions "apply to all pending actions and

When a divorce shall be adjudged, the court shall make such order touching the alimony and maintenance of the wife, and the care, custody and maintenance of the children * * * as * * * shall be reasonable * * * [Mo. Rev. Stat. sec. 452.070 (Vernon 1952) (repealed 1973).]

Under this statutory framework, it is clear that, at least insofar as the settlement of property rights is concerned, the Missouri divorce court is without power to decree a disposition of such rights or to vary the terms of an agreement between the spouses settling such rights. *North v. North*, 339 Mo. 1226, 1235–1236, 100 S.W.2d 582, 587 (1936); *Nelson v. Nelson*, 516 S.W.2d 574, 577–578 (Mo. App. 1974); *Goulding v. Goulding*, 497 S.W.2d 842, 844 (Mo. App. 1973). Nor does the fact that the Missouri divorce court had the power to decree or vary the terms in respect of alimony and child support expand the jurisdiction in respect of the settlement of property rights. *Ecton v. Tomlinson*, 278 Mo. 282, 288, 212 S.W. 865, 866 (1919); *Bishop v. Bishop*, 151 S.W.2d 553, 556 (Mo. App. 1941). See also *Summers v. Summers*, 597 S.W.2d 692, 694 (Mo. App. 1980).[8]

Moreover, even if we were to construe the provision disposing of the insurance policy as, in effect, providing for alimony and child support and therefore subject to a potential power of modification by the Missouri divorce court, petitioner could not prevail. It is also well established under Missouri law that courts may not, pursuant to their statutory authority to order alimony or child support, order payments that extend beyond the obligor's death.[9] *Gardine v. Cottey*, 360 Mo. 681, 710, 230 S.W.2d 731, 750 (1950); *North v. North*, 339 Mo. at 1232–1233, 100 S.W.2d at 585. "Since the benefits of the life insurance policy are not payable prior to husband's death, a decree that [the life insurance policies] be kept in effect amounts to an order for posthumous child support. * * * such an order would

---

proceedings commenced prior to January 1, 1974 with respect to issues on which a judgment has not been entered." Mo. Rev. Stat. sec. 452.415 (Vernon 1977). Since the decedent and Ruth were divorced in 1971 and decedent died in 1973, the new provisions are not applicable to the disposition of this case. The discussion of Missouri law refers to Missouri law as it existed at the time of Ruth's and decedent's divorce.

[8]The Missouri divorce court appears to have the power to set aside a property settlement agreement where there is fraud, collusion, or compulsion (see, e.g., *North v. North*, 339 Mo. 1226, 1235, 100 S.W.2d 582, 587 (1936)), but the existence of such a power would not be sufficient to justify the conclusion that the property settlement was founded on the divorce decree. See *Estate of Fenton v. Commissioner*, 70 T.C. 263, 272 (1978).

[9]Presumably, no post-death alimony is involved herein by virtue of par. 4D of the stipulation. See p. 1174 *supra*.

be beyond the authority of the trial court." *Niederkorn v. Niederkorn*, 616 S.W.2d 529, 538 (Mo. App. 1981). Cf. *Chappell v. Nash*, 399 S.W.2d 253, 256 (Mo. App. 1965).

Petitioner does not appear to dispute the foregoing analysis of Missouri law as it existed at the relevant times herein. Rather, petitioner seems to seek refuge in the proposition that the Satzes' agreement was intended to be only advisory to the divorce court and, for that reason, was modifiable by that court. While there are some elements pointing in favor of petitioner's position that the agreement was purely advisory, we are inclined to the view that it was not, at least insofar as the disposition of the life insurance is concerned. We think it significant that, while the Satzes went to great lengths to spell out in the agreement the extent to which the divorce court could modify the provisions for alimony and child support, there was no such reference to any right in the divorce court to modify the property settlement provisions (including that dealing with the life insurance policy), and the decree itself was conspicuously silent as to the latter provisions. The fact that the stipulation was "subject to the approval" of the court is not in and of itself determinative of the agreement's advisory nature. *LaFountain v. LaFountain*, 523 S.W.2d 847 (Mo. App. 1975). Cf. *Alverson v. Alverson*, 249 S.W.2d 472 (Mo. App. 1952). In any event, even if we accept petitioner's contention as to the advisory character of the agreement, it would not have conferred sufficient power on the Missouri divorce court to enable us to say that the claim involved herein was founded on the decree rather than the agreement of the parties. The proper frame of reference on this issue is clearly set forth in *Bishop v. Bishop*, 151 S.W.2d at 556:

> We are not saying that the court may not in a divorce suit adjudicate a settlement of property rights upon a stipulation of the parties consenting to such adjudication. However, *this does not alter the fact that in such case the adjudication* is without the purview of the relief that may be granted in a divorce action proceeding to judgment in the statutory way, but *is based upon the stipulation of the parties consenting to such adjudication.* [Emphasis supplied.]

We hold that Ruth's claim in respect of the life insurance was founded on the agreement and not the divorce decree and that such claim will be deductible only if the consideration requirement of section 2053(c)(1)(A) is met.

### 3. Full and Adequate Consideration

Having concluded that Ruth's claim is founded on an agreement, we must determine whether the agreement was contracted for "adequate and full consideration in money or money's worth." See sec. 2053(c)(1)(A). Petitioner argues that the support rights relinquished by Ruth and the Satzes' minor children fulfill the consideration requirement of section 2053(c)(1)(A). Although we agree that support rights constitute consideration in money or money's worth (see, e.g., *Estate of Iversen v. Commissioner*, 65 T.C. 391, 405 (1975), revd. and remanded on another issue 552 F.2d 977 (3d Cir. 1977); *Estate of McKeon v. Commissioner*, 25 T.C. 697, 705–706 (1956),[10] petitioner has not satisfied its burden of proving (see Rule 142(a)) that the insurance provision was bargained for in exchange for support rights.[11] Ruth and the Satzes' children, pursuant to the separation agreement, received monthly payments totaling $1,000. Nevertheless, petitioner contends that Ruth's and the children's support rights were worth more than that amount and that the value of their support rights in excess of the monthly payments constitutes full and adequate consideration. See, e.g., *Estate of Fenton v. Commissioner*, 70 T.C. 263, 274–278 (1978). Petitioner, however, has presented no evidence from which we could conclude that, under Missouri law, the Satzes' support rights were worth anything more than the monthly payments they actually received.[12] There is no

---

[10]See also Rev. Rul. 68–379, 1968–2 C.B. 414.

[11]Sec. 2043(b) provides that:

(b) MARITAL RIGHTS NOT TREATED AS CONSIDERATION.—For purposes of this chapter, a relinquishment or promised relinquishment of dower or curtesy, or of a statutory estate created in lieu of dower or curtesy, or of other marital rights in the decedent's property or estate, shall not be considered to any extent a consideration "in money or money's worth."

At first blush, this section appears to cover the instant case and prohibit rights released by Ruth from serving as consideration. However, the seemingly broad language of "other marital rights in the decedent's property or estate" is "limited in meaning to rights in property similar to dower or curtesy which accrue to a surviving spouse upon the decedent's death." *Estate of Glen v. Commissioner*, 45 T.C. 323, 339 (1966). "Other marital rights" do not encompass support rights, e.g., *Estate of McKeon v. Commissioner*, 25 T.C. 697, 705–706 (1956), or property interests arising upon divorce, *Estate of Glen v. Commissioner, supra.*

[12]Respondent's position appears to be that Ruth did not receive the right to the insurance proceeds in exchange for support rights because the Missouri court could not have awarded the insurance policies to her under its statutory authority to grant alimony and child support. This argument misses the mark. The issue is whether Ruth contracted to receive

evidence of the value of the couple's marital assets, of Ruth's and decedent's income following the divorce, or of Ruth's, decedent's, and the children's expenses. In short, the record in this case, unlike that in *Estate of Fenton v. Commissioner, supra*, and *Estate of Iversen v. Commissioner, supra*, lacks any evidence from which we can value the postponed support rights or, in fact, determine the existence of any uncompensated support rights.

Petitioner argues that the decision in *Bowes v. United States*, an unreported case (N.D. Ill. 1977, 41 AFTR 2d 78–1431, 77–2 USTC par. 13,212), supports its position. We find that case inapposite. In *Bowes*, the decedent's obligation to his minor children was held to be founded on the divorce decree. California State courts, pursuant to their statutory authority to grant child support, had the power to order a father to maintain life insurance policies for the benefit of his minor children. Missouri courts, however, do not have comparable statutory authority. See p. 1180 *supra*. Therefore, petitioner cannot avail itself of the divorce decree exception to the consideration requirement. With respect to the child who had attained majority before his father's death and as to whom the decree was unenforceable, the *Bowes* case acknowledged that his claim was deductible only if supported by consideration. The court went on to find that the relinquishment of the support rights by decedent's spouse (the child's mother) furnished the necessary consideration. The record in the instant case, however, does not support petitioner's contention that Ruth or the children exchanged their support rights for anything other than the monthly payments of $1,000.

Finally, we are left with the question of the effect of section 2516, which provides that where spouses enter into a written separation agreement and divorce occurs within 2 years thereafter, any transfer of property or interests in property made pursuant to such agreement to either spouse in settlement of his or her marital or property rights or to provide support for the couple's minor children shall be deemed transfers for full and adequate consideration in money or

---

the insurance proceeds *in exchange for* what the court *could have awarded* for statutory alimony and child support.

money's worth. In the past, we have refrained from deciding whether section 2516, which is set forth in the provisions dealing with the gift tax, should be read into the estate tax so as to supply consideration for transfers of property or interests in property for the purposes of the estate tax. See, e.g., *Estate of Fenton v. Commissioner, supra* at 274; *Estate of Nelson v. Commissioner*, 47 T.C. 279, 286 n. 8 (1966), revd. and remanded on other grounds 396 F.2d 519 (2d Cir. 1968); *Estate of Glen v. Commissioner*, 45 T.C. 323, 338–339 (1966); *Estate of Keller v. Commissioner*, 44 T.C. 851, 861–862 (1965). Petitioner argues that, pursuant to the doctrine of pari materia, section 2516 should be imported into the estate tax in order to satisfy the consideration requirement of section 2053(c)(1)(A). Respondent argues that the requirement of a "transfer of property" contained in section 2516 has not been satisfied and that, in any event, section 2516 does not apply to the estate tax. We find it unnecessary to address the issue of whether there was a "transfer of property," because we are satisfied that, in any event, section 2516 does not supply consideration in the estate tax arena.

Section 2516 contains no language which would limit its provisions to the gift tax,[13] and we are instructed to draw no presumption of legislative construction from the placement of section 2516 among the gift tax provisions of the Code. See sec. 7806.[14] Were we faced with this lack of limiting language combined with an ambiguous legislative history, we might be persuaded to read section 2516 into the estate tax. Such is not the case at bar, however. In this respect, the legislative history of section 2516 is unambiguous; Congress enacted the section to settle the *gift* tax implications of property settlements incident to a divorce. See H. Rept. 1337, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. 94, A323 (1954); S. Rept. 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. 128, 481 (1954). When it added section 2516 to the gift tax, Congress was alerted to the fact that similar unresolved issues

---

[13]Compare the limiting language of sec. 2043(b), "For purposes of this chapter."

[14]Sec. 7806(b) provides:

(b) ARRANGEMENT AND CLASSIFICATION.—No inference, implication, or presumption of legislative construction shall be drawn or made by reason of the location or grouping of any particular section or provision or portion of this title * * *

existed in the estate tax provisions of the Code. See Hearings on H.R. 8300 Before the Senate Comm. on Finance, 83d Cong., 2d Sess. 580 (1954). Despite recommendations that section 2516 be extended to the estate tax,[15] Congress did not do so either in 1954 or on the many subsequent occasions when major changes were made in the estate tax provisions of the Code.

The Supreme Court in *Merrill v. Fahs*, 324 U.S. 308 (1945), utilized the doctrine of pari materia to read section 812(b) of the Internal Revenue Code of 1939[16] into the gift tax, despite language explicitly limiting that section to the estate tax. Section 812(b) defined "consideration in money or money's worth" for estate tax purposes and the Court found "every reason for giving the same words in the gift tax the same reading." 324 U.S. at 313. We, of course, accept the doctrine of pari materia applied in *Merrill v. Fahs, supra,* as a guide for the interpretation of the estate and gift tax provisions. Pari materia, however, is an aid for construction only in the absence of something more definite. 1 J. Mertens, Law of Federal Gift and Estate Taxation sec. 4.05, at 129 (1959). In the face of congressional intent to the contrary, pari materia is not a proper vehicle for judicial correlation of the estate and gift tax provisions. Cf. *Harris v. Commissioner,* 178 F.2d 861, 862–863 (2d Cir. 1949), revd. on another issue 340 U.S. 106 (1950).

We recognize that section 2516 is phrased in definitional terms, as is section 2043(b) and its predecessor, section 812(b) of the Internal Revenue Code of 1939. But, we think that the phraseology of section 2516 is deceptive in that the section in fact operates substantively to exempt from the gift tax, transfers which satisfy very specific requirements. Exemptions from tax are not to be lightly inferred; any uncertainties in such provisions are to be construed against the taxpayer. *Phipps v. Commissioner,* 91 F.2d 627, 629–630 (10th Cir. 1937),

---

[15]See Hearings on H.R. 8300 Before the Senate Comm. on Finance, 83d Cong., 2d Sess. 580 (1954); 81 A.B.A. Rept. 155, 166–167 (1956); H.R. 11450, 89th Cong., 1st Sess. sec. 71 (1965).

[16]Sec. 812(b) of the Internal Revenue Code of 1939 (the predecessor of sec. 2043(b)) provided:

For the purposes of [the estate tax], a relinquishment or promised relinquishment of dower, curtesy, or of a statutory estate created in lieu of dower or curtesy, or of other marital rights in the decedent's property or estate, shall not be considered to any extent a consideration "in money or money's worth."

affg. 34 B.T.A. 641 (1936). See also *Greene v. United States*, 145 Ct. Cl. 259, 171 F. Supp. 459 (1959). Under such circumstances, the doctrine of pari materia is not properly applicable. See *Harris v. Commissioner, supra* at 861–862; *MacDonald v. United States*, 139 F. Supp. 598 (D. Mass. 1956). But see *Commissioner v. Estate of Watson*, 216 F.2d 941, 945 (2d Cir. 1954), affg. 20 T.C. 386 (1953). Moreover, were we to import section 2516 into the estate tax, we would be faced with a conflict between the broad language of section 2043(b), which mandates that marital rights *do not constitute* consideration, and section 2516, which provides that, under specific limited circumstances, marital rights *do* constitute consideration. No comparable conflict was involved in *Merrill v. Fahs, supra*.

Under the foregoing circumstances, we think that for us to incorporate section 2516 into the estate tax and thereby limit the effect of section 2043(b) would cause us to wander beyond the proper bounds of judicial interpretation and unjustifiably into the arena of judicial legislation.

We cannot conclude, as the Supreme Court did in *Merrill v. Fahs, supra*, as the foundation for its holding that the additional language in the predecessor of section 2043(b) should be read into the gift tax, under the doctrine of pari materia, that section 2516 was inserted in the gift tax provisions out of "cautious redundancy." See 324 U.S. at 312. Moreover, we note that the Supreme Court also pointed out that "Correlation of the gift tax and the estate tax still requires legislative intervention." 324 U.S. at 313. We hold that this principle is applicable to the incorporation of section 2516 into the estate tax provisions.

In sum, because Ruth's claim was founded on the separation agreement, it was deductible only to the extent it was contracted for full and adequate consideration. Petitioner has failed to prove the existence of any postponed support rights and section 2516 does not provide a substitute for such failure for purposes of the estate tax.

*Decision will be entered for the respondent.*